# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**RICHARD NALTNER and DAVID DEETZ, on behalf of themselves and on behalf of the classes of United States Secret Service agents similarly situated to them,**

        **Plaintiffs,**

**v.**

**UNITED STATES OF AMERICA,**

        **Defendant.**

Case No.: 21-1064C

## COMPLAINT

Plaintiffs Richard Naltner ("Naltner") and David Deetz ("Deetz") on behalf of themselves and the below-defined class of similarly situated United States Secret Service ("USSS") agents hereby complain and allege against the United States of America ("U.S.") as follows:

### I.

### INTRODUCTION

1. This is an action for wages that the USSS should have paid to Naltner and Deetz and to other professionals (collectively "Special Agents") of the USSS while performing certain duties, including protective services authorized by Section 3056(a) of Title 18, and including, but not limited to, performing at least two hours of overtime work not scheduled in advance of the administrative workweek.

## II.

## PARTIES

2. The U.S. is a sovereign nation.

3. Naltner is a citizen of the U.S. and is employed as a USSS Special Agent.

4. Deetz is a citizen of the U.S. and was employed as a USSS Special Agent

## III.

## JURISDICTION

5. Jurisdiction of this Court is invoked by the Plaintiffs pursuant to 28 U.S.C. §1346(a)(2), the Tucker Act, 28 U.S.C. §1491(a)(1) (because their claims are founded upon the Constitution, an Act of Congress, any regulation of an executive department, or any express or implied contract with the United States), as well as, 5 U.S.C. § 5542 and 5 U.S.C. § 5545a (which are money mandating statutes).

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

6. The USSS is a law enforcement agency within the U.S. Department of Homeland Security having two areas of primary responsibility:

- Financial Crimes – covering missions such as prevention and investigation of counterfeit currency and major fraud; and
- Protection – covering missions including ensuring the safety of current and former national leaders and their families, such as the President, past Presidents, Vice Presidents, presidential candidates, visiting heads of state, and foreign embassies.

7. This case primarily, but not exclusively, involves payment of wages

for hours spent on protective details.

8. Naltner has been employed with the USSS since October 2007. Naltner began his employment with the USSS as a GS-7-1. In the time since, he has been promoted to a GS-13 with an annual base salary within the 2021 range of other GS-13's. In addition to this amount, Naltner has been eligible in each year of his tenure to receive a 25 percent enhancement to his base salary under a provision known as "Law Enforcement Availability Pay" or "LEAP." *See* 5 U.S.C. § 5545a(h)(1).

9. Deetz was employed by the USSS from January 4, 1998 to September 29, 2018. He was subject to the same USSS pay practices and policies as Naltner.

10. The LEAP statute "provide[s] premium pay to criminal investigators to ensure the availability of criminal investigators for unscheduled duty in excess of a 40-hour workweek based on the needs of an employing agency." *Id.* at § 5545a(b). The term "criminal investigator means a law enforcement officer as defined under section 5541(3)" and who is required to possess certain attributes and perform certain actions delineated in the statute. 5 U.S.C. § 5545a(2); *see* 5 C.F.R. § 550.103 (defining criminal investigator).

11. There is no dispute that Naltner and Deetz and other similarly situated Special Agents are criminal investigators within the meaning of the LEAP statute.

12. Pursuant to 5 C.F.R. § 610.111, prior to every working week, Naltner and other USSS Special Agents are provided a weekly schedule setting forth their assignments for the week (as reasonably foreseen by their superiors).[1] *See e.g.*

---

[1] 5 C.F.R. § 610.111 provides, in pertinent part, that:
(a) The head of each agency, with respect to each full-time employee to whom this subpart applies, shall establish by a written agency policy statement:
    (1) A basic workweek of 40 hours which does not extend over more than 6 of any 7 consecutive days. Except as provided in paragraphs (b), (c), and (d) of this section, the written agency policy statement shall specify the days and hours within the administrative workweek that constitute the basic workweek.

*Buchanan v. U.S.*, 31 Fed.Cl. 496 (1994). These schedules are typically for a Monday through Friday work week, but not exclusively so. Because USSS Special Agents are "criminal investigators," they are exempted from the maximum hour requirements of the Fair Labor Standards Act under 29 U.S.C. § 213(b)(30). Their weekly schedules therefore frequently include overtime work, *i.e.*, daily tours of duty in excess of 8 hours per day and workweeks in excess of 40 per week.[2] This will be referred to herein as "scheduled overtime."

13. Because of the nature of their work, however, USSS Special Agents' weekly schedules are often subject to change before or during the workweek. These changes can happen in several ways. First, a Special Agent can be directed by his supervisor to remain at a protective post for longer than the reasonably foreseen amount of time – if, for instance, a presidential rally were to run longer than anticipated, or if the candidate decided to attend an additional event that was not anticipated prior to the beginning of the administrative work week. Another way that a Special Agent's protective tour of duty during a particular day might be extended beyond the reasonably anticipated (regularly scheduled) workday is if the Special Agent, in his discretion, determines that such additional hours are necessary. An example of this occurring would be if the candidate's plane was

---

(2) A regularly scheduled administrative workweek that consists of the 40-hour basic workweek established in accordance with paragraph (a)(1) of this section, plus the period of regular overtime work, if any, required of each employee. Except as provided in paragraphs (b), (c), and (d) of this section, the written agency policy statement, for purposes of leave and overtime pay administration, shall specify by days and hours of each day the periods included in the regularly scheduled administrative workweek that do not constitute a part of the basic workweek…

(c)(1) When an employee is paid additional [LEAP] pay under section 5545(c)(1) of title 5, United States Code, his regularly scheduled administrative workweek is the total number of regularly scheduled hours of duty a week.

[2] *See* 5 U.S.C. § 5542(a).

subject to an unforeseen delay, or if the Special Agent was to become involved in an arrest or other activity that in his discretion, he believes he is required to work through to the end, even though that activity has not been specifically approved by the agent's supervisor.

14. USSS Special Agents are compensated in three main ways for their work: (1) salary, (2) overtime, and (3) the LEAP enhancement – if the conditions for receiving it are met.[3]

15. As stated, the LEAP enhancement is to compensate Special Agents for "unscheduled duty" as defined by 5 U.S.C. §§ 5545a(3)(A) and (B)[4] and its implementing regulation, 5 C.F.R. § 550.182. LEAP is not equivalent to overtime pay. Rather, the LEAP enhancement is a 25 percent add-on to a Special Agent's

---

[3] *See* 5 U.S.C. §§ 5545a(a)(2) (providing for LEAP pay); 5545a(e) (agency certification requirement); and 5 C.F.R. § 550.103 (2001). There are also other pay enhancements available to certain agents for select duties, but those enhancements are not at issue here.

[4] The term "unscheduled duty" is defined as follows in 5 U.S.C. §§ 5545a (3)(A) and (B):
> (3) the term "unscheduled duty" means hours of duty a criminal investigator works, or is determined to be available for work, that are not—
> (A) part of the 40 hours in the basic work week of the investigator; or
> (B) overtime hours paid under section 5542... Overtime hours paid under Section 5542" for Secret Service agents who are eligible for LEAP pay are defined to include:
>> (a) For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek... , or in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates:
>>> (1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10..., the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay.

base salary which, although it is "premium pay" under 5 U.S.C. § § 5542(a)(2) and 5 U.S.C. § 5545a(b), is part of the Special Agents' "basic pay" as stated in 5 U.S.C. § 5545a(h)(2)(A) and 5 U.S.C. § 8331(3)(E)(i) – "(3) 'basic pay' includes— (E) availability pay— (i) received by a criminal investigator under section 5545a of this title…"

16. The LEAP enhancement is essentially a tool for achieving administrative convenience given the recognition that USSS Special Agents like other sorts of criminal investigators' workweeks are inherently hard to predict and that often investigators are required to work overtime hours that are not possible to foresee prior to the administrative workweek's being set; by granting eligible "criminal investigators" a blanket pay enhancement for unscheduled overtime duty, it eliminates the substantial burden on the agency to track each individual Special Agent's unscheduled overtime.

17. In sum, LEAP is not pay for certain hours, but is instead a flat percentage of the investigator's base pay, which remains fixed regardless of the actual number of hours worked in a given pay period, and is therefore part of "basic pay" (defined at 5 U.S.C. § 8331(3)) and is not overtime compensation. *Id.; see, Federal Air Marshal 1 v. U.S.*, 84 Fed. Cl. 585, 595-96 (2008).

18. Since Naltner's and Deetz's tenure with the USSS began, and like all other USSS Special Agents, much of their time has been spent on protective details. This was especially true in 2015 and thereafter because of the presidential campaign(s). During the vast majority of the weeks they were employed with the USSS, their regular weekly schedules included scheduled overtime work. In many of these weeks, they had also worked many additional hours of overtime performing protective missions that were not part of their regular schedule. As set forth below, Naltner and Deetz contend that the U.S. has failed to pay them properly for their overtime hours, and that the U.S. has in other respects also failed

6

to pay them and other USSS Special Agents appropriately for the vital work that they do.

A. **The U.S. Improperly Required Special Agents To Perform Two *Consecutive* Hours Of Unscheduled Overtime Work In Order To Receive Overtime Pay For Certain Regularly Scheduled Overtime Hours**

19. Naltner and Deetz on behalf of themselves and all similarly situated Special Agents, contend the U.S. committed improper pay actions that resulted in the U.S. failing to pay them overtime/premium pay that was properly due and owing to them.

20. One improper pay practice derives from a single word difference that exists between 5 U.S.C. § 5542(e) and its implementing regulation, 5 C.F.R. § 550.182(b)(2); the word is "consecutive."

21. Translated into basic English, 5 U.S.C. § 5542(e) provides that "agents shall be paid at overtime rates for all regularly scheduled protective overtime work they do if the agent also works 2 hours of unscheduled overtime on the same day."[5] Thus, if a Special Agent is scheduled to work for 12 hours doing protective duty and ends up working 14 hours that day, subsection (e) plainly requires that the Special Agent be paid at his appropriate overtime rate for hours 8-

---

[5] The actual text of 5 USC 5542(e) provides that:
  (e) notwithstanding subsection (d)(1) of this section [which generally sets forth what is overtime work for investigators], all hours of overtime work scheduled in advance of the administrative workweek [i.e. regularly scheduled overtime work] shall be compensated under subsection (a) [i.e. at the agent's appropriate overtime rate] (a) if that work involves duties as authorized by section 3056(a) of Title 18 or section 37(a)(3) of the State Department basic Authorities Act of 1956 [i.e. protective duties], ***and if the investigator performs, on that same day, at least 2 hours of overtime work not scheduled in advance of the administrative workweek.***" (Emphasis added).

12, *i.e.*, "all hours of overtime work scheduled in advance of the administrative workweek." (Hours 12-14, which are "unscheduled duty," are covered by the LEAP enhancement).

22. The U.S. violated the terms of 5 U.S.C. § 5542(e) by relying instead for its pay policies on the more restrictive language in 5 C.F.R. § 550.182(b)(2) – wherein the Office of Personnel Management ("OPM") inserted the requirement that the additional two hours of unscheduled overtime work Special Agents perform must be "consecutive" in order for their regularly scheduled overtime be paid at overtime rates.

23. OPM's consecutive hours requirement is contrary to the plain meaning of 5 U.S.C. § 5542(e), which is triggered by any two hours of unscheduled overtime, whether consecutive or not. For example, assume that an agent who is originally scheduled to work a ten-hour shift from 8 a.m. to 6 p.m. is told by his supervisor after the weekly schedule has been set that he must now show up on Thursday morning at 6:30 a.m. (instead of 8 a.m.) to attend a meeting and that he is also required on the same day to work from 6 p.m. to 7:30 p.m. to cover a last minute campaign event. In this situation, because the agent did not work two *consecutive* hours of unscheduled overtime on that day, he will not receive any overtime pay; the US will instead treat all five of the Special Agent's overtime hours that day as being compensated by his LEAP enhancement. This is wrong. The Special Agent should receive his eight hours of basic pay and two hours of overtime pay (at his appropriate overtime rate) based on the proposition that where a regulation is more restrictive than the standard provided by a federal statute, the regulation is void.[6]

---

[6] See, e.g., *Marion v. Gardner*, 359 F.2d 175 (8th Cir. 1966); *Delaware Div. of Health & Soc. Servs. v. Dept. of Health & Human Servs.*, 665 F.Supp. 1104. (D.Del.1987).

24. On July 20, 2018 the United States Court of Appeals for the Federal Circuit issued a decision finding that using the traditional tools of statutory construction, Section 5542(e) unambiguously applies without regard to whether the two hours of unscheduled overtime are consecutive. Thus, the Court found that the USSS' implementation of pay policies that incorporate OPM's consecutive hours requirement to be improper. *Horvath v. United States*, 896 F.3d 1317 (Fed. Cir. 2018). Despite this order the text of 5 C.F.R. § 550.182(b)(2) is unchanged.

25. The CFR that the United States Court of Appeals for the Federal Circuit invalidated, 5 C.F.R. § 550.182(b)(2), pertains only to USSS Special Agents who are/were performing protective duties authorized by 18 U.S.C. § 3506(a) and 22 U.S.C. § 2709(a)(3), respectively.

26. The claim set forth in this complaint were also brought forth by the plaintiff Michael Horvath in *Horvath v. United States*. At the certification stage in *Horvath*, the court concluded that although Horvath's claim <u>was appropriate for certification</u>, he was not an appropriate class representative because discovery had found that Mr. Horvath had not worked the two hours of unscheduled overtime as set forth in paragraph 23. Notwithstanding, the USSS concluded that Mr. Horvath was not paid for certain other hours and a judgment was rendered in his favor for that amount. Here, both Naltner and Deetz worked hours the USSS deemed LEAP pursuant to 5 C.F.R. § 550.182(b)(2), but which instead should have been compensated as regular overtime. Both Naltner and Deetz have experienced the loss of pay set forth in this complaint.

## IV.
## CLASS ALLEGATIONS

27. Naltner and Deetz bring this action as a class action pursuant to RCFC Rule 23 on behalf of themselves and on behalf of the class of USSS Special Agents similarly situated to them.

28. Naltner and Deetz seek to represent the following class of USSS Special Agents (collectively referred to herein as "Class" or "Class Members"):

> **(1) All United States Secret Service criminal investigators/law enforcement officers employed within the last six years who receive availability pay pursuant to 5 U.S.C. § 5545a and who have not been paid overtime (at their appropriate overtime rates) for all regularly scheduled overtime work that they performed where, on the same day in which they also worked at least two hours of unscheduled overtime on protective missions.**

29. Naltner and Deetz reserve the right to amend the definitions of the Class following discovery.

30. Plaintiffs do not know the exact size of the Class or the identities of all of the Class Members since such information is in the exclusive control of the U.S. Plaintiffs believe that the Class encompasses at least 1,825 USSS Special Agents who are geographically dispersed throughout the United States and internationally. Plaintiffs further believe that the U.S. previously identified putative Class Members during the discovery process in *Horvath v. United States*, case no. 1:16-cv-00688-RAH.

31. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individuals. Among these common questions of law and fact are:

  a. Damages flowing from misapplication of 5 CFR 550.182(b)(2)'s "2 or more *consecutive* hours of unscheduled work" requirement (as previously described) which is void as inconsistent with 5 USC 5542(e);

  b. Whether Special Agents have otherwise been paid correctly for the time that they have worked;

  c. Whether the U.S. should be enjoined from engaging in any

of the conduct complained of herein.

32. Importantly, there are factual issues common to the Class that are best resolved through this class action. The United States Court of Appeals for the Federal Circuit has invalidated OPM's consecutive hours requirement, which has been an applied pay practice by the USSS. Thus, the majority of the USSS workforce has been affected; a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. RCFC 23(b)(3).

33. The claims of Naltner and Deetz are typical of the claims of the members of the Class. While the specific amounts of money each Class Member may have lost may be different – depending upon, for instance the appropriate rate of overtime and/or the number of compensable hours of overtime worked – the damages suffered by each of the members of the Class will be easily calculable using uniform formulae.

34. The claims of Plaintiffs do not conflict with the interests of any other members of the Class in that Plaintiffs and the other members of the Class were subjected to the same wrongful policies, practices and procedures of the U.S.

35. Plaintiffs will fairly and adequately represent the interests of the Class and they have retained skilled and experienced counsel to represent the Class Members in this action.

36. Prosecution of separate actions by individual Class Members challenging the USSS' policies, practices and procedures that have class-wide application and effect would create the risk of inconsistent or varying adjudications with respect to individual Class Members which could establish incompatible standards of conduct for the U.S. Prosecution of separate actions would also create the risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of Class Members who are not parties to those adjudications and would substantially impair or impede their ability

to protect their interests.

37. In adopting and implementing the policies, practices and procedures herein alleged, the U.S. has acted, failed to or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or declaratory relief with respect to the Classes as a whole.

38. A class action is superior to other available methods for fairly and efficiently adjudicating the issues regarding the USSS' policies, practices, procedures, and conduct concerning wage payments to USSS Special Agents, which have been deemed in violation of federal law.

## V.

## FIRST CAUSE OF ACTION – FAILURE TO PAY WAGES

39. Plaintiffs reallege and incorporate by reference paragraphs 1 through 37 as though set forth in full.

40. The U.S. has wrongfully failed to appropriately compensate Plaintiffs and the Class of similarly situated Special Agents: for wages earned while performing certain duties, including protective services authorized by Section 3056(a) of Title 18, and including, but not limited to, while performing at least two hours of overtime work not scheduled in advance of the administrative workweek.

41. As a direct and proximate result of the U.S.'s failure to appropriately compensate Plaintiffs and the Class Members as heretofore alleged, Plaintiffs and the Class Members have been damaged in the amount of the wages they should have received had the U.S. not implemented its wrongful pay policies as well as interest thereon.

## VI.

## SECOND CAUSE OF ACTION – VIOLATION OF BACK PAY ACT

42. Plaintiffs reallege and incorporate by reference paragraphs 1 through 40 as though set forth in full.

43. Plaintiffs and similarly situated Special Agents are entitled under the Back Pay Act, 5 U.S.C. § 5596, to payment of interest from their scheduled paydays to the date of judgment for all amounts not paid according to law, to attorneys' fees and to reimbursement of expenses.

## VII.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that this court enter judgment in favor of Plaintiffs and all other USSS Special Agents who opt into this action and against defendant, including but not limited to the following relief:

A. Allow Plaintiffs' claims to proceed on behalf of themselves and similarly situated class members;

B. Allow Naltner and Deetz to be the named representatives of the Class alleged herein and their counsel to be counsel for those Class.

C. Declare that the U.S. was in violation of federal laws governing the payment of USSS Special Agents as previously alleged;

D. Order the U.S. to provide a proper accounting to Plaintiffs and those Class Members who opt into the Class certified herein for all wages due to them;

E. Award to Plaintiffs those Class Members who opt into the Class certified herein back pay and/or wages/overtime due for all hours they worked that they were not properly compensated for;

F. Award pre- and post-judgment interest on all sums awarded as wages in this action to Plaintiffs and all other USSS Special Agents who opt into the Class certified herein;

G.  Award to Plaintiffs and those Class Members who opt into the Class certified herein such other compensation and benefits to which they may be entitled as a result of the unlawful practices and policies of defendant;

H.  Award to Plaintiffs and all other Class Members who opt into the Class certified herein costs of suit;

I.  Award to Plaintiffs and those Class Members who opt into the Class certified herein reasonable attorneys' fees;

J.  Award to Plaintiffs a reasonable incentive award of $10,000 each for their efforts acting as class representatives; and

K.  Grant such other and further relief as this Court deems to be appropriate and just.

Respectfully Submitted,

CLARK HILL PLLC

By: ___/s/ Nicholas M. Wieczorek___
    Nicholas M. Wieczorek
    *Attorneys for Plaintiffs*

Nicholas M. Wieczorek
California State Bar No. 110170
Nevada State Bar No. 6170
NWieczorek@clarkhill.com
Clark Hill PLLC
500 S. Rancho Drive, Suite 17
Las Vegas, Nevada 89106
Telephone: 702-862-8300
Facsimile: 702-862-8400

Dated: 3/15/2021